Good morning. Good morning, Your Honor. David Garvin on behalf of Appellant Mr. and Mrs. Beland. If it pleases the Court, I'd like to reserve four minutes of my time, so it would be 11 and 4. It is well established that a consent search or interview is unreasonable under the Fourth Amendment if obtained through fraud, deceit, trickery, or affirmative misrepresentation. To determine, to make this determination, the Court in United States v. Grunfeld established a three-step test. And that three-step test consisted of the following. One, firm indications of fraud. Two, clear and convincing evidence the defendant was affirmatively misled. And three, prejudice to defendant's constitutional rights. It is important to note that in this case, a unique situation. The district court found that the first element of the three-step process had been met. That is, the firm indications of fraud. In addition, the Court found that the Beland's constitutional rights had, in fact, been prejudiced. So that left us with the second step, clear evidence of the defendant being affirmatively misled. If we turn to United States v. Peters, we see that the courts say that a civil when the auditors develop firm indication of fraud. Well, in this case, the Court found that firm indication of fraud had been established. But does there not need to be an affirmative misrepresentation? Yes, sir. And I am going to direct my attention to that, because that is an overriding important question. So, in Peters, it was determined that a revenue agent has developed a firm indication of fraud when she has established that a taxpayer has engaged in a consistent pattern. Counsel, I'd really appreciate it if you could walk me through the difference between what I see as a lot of possibly vague statements or possibly evasive statements. And the difference between that and what is required for affirmative misrepresentations. Yes, Your Honor, and I will do just that. The point is that when you have firm indications of fraud under the Peters Court, and you continue to act, because at that point, the IRS should stop the civil investigation and should refer it to the criminal investigative division. At that point, if the audit does not stop, then you are conducting a criminal investigation under the auspices of an ordinary civil tax examination. And that, in and of itself, is a substantial misrepresentation. You seem to be arguing that once the amount of proof before the civil tax investigators reaches a certain point, anything they do after that is sort of impliedly misleading. But it seems that the cases are talking about something more, something more affirmative in terms of telling the taxpayer who's in the process of a civil audit, you're not going to be prosecuted criminally, don't worry about this, and then it turns out that's what's happening. But that's not quite what we have here. Yes, you are correct, Judge Briss. We have two things going on here. First, we have in Peters the situation in which were the firm indications of fraud established. In many of the cases that you are alluding to, that determination was to the negative. They said it were not established. In this particular case, the court found that it was established. So at that point — Counsel, you're focusing a lot on Peters, which is a Seventh Circuit case. Yes. But under our Ninth Circuit law, and I'm referring specifically to United States v. Nowatzki, don't we have case law that says, absent unusual circumstances, the exclusionary rule doesn't apply when IRS agents violate internal regulations. And I think what you're arguing here is that the violation of internal regulation, which is the proceeding past the point of finding firm indications of fraud, that that is what is transforming this into this higher threshold showing of affirmative misrepresentations. Well, actually, the Court accurately stated the law, except when the unusual circumstances, when it adversely affects the taxpayer's constitutional rights. And the Court in this case found that unusual circumstance that it did, in fact, prejudice the BLIN's constitutional rights. So because we have both of those elements in this case, then it's the unusual circumstance in which they should have stopped. They did not stop. And by not stopping, we go back to what Peters teaches us. And by not stopping, the fact that they continued what was alleged to be a typical civil tax audit, when, in fact, it was a criminal investigation, in and of itself is a misrepresentation. Counsel, do you agree that at the outset, when the IRS started the civil audit process, that it did not have what you're describing as sort of firm indications of fraud? Yes, I would agree. Okay, so let me, I'm going to start. That was just a sort of a preface question. If that's true, at the outset, they didn't already have this strong indication of fraud. Under the Supreme Court's decision in Cordell and later our decision in Stringer, isn't that timing relevant? Because I understand the Supreme Court standard when talking about dual investigations on civil and criminal side. It's only improper if the civil investigation was brought solely to pursue criminal investigation goals. And we have talked about the timing of the different investigations being a relevant factor in assessing whether the government's sole purpose was a criminal one. So how do you square the order of events in this case with Cordell and Stringer? Yes. On December 12th, the fraud technical advisor met with revenue agent Raymond. That was in 2014. And four days later, the fraud technical advisor, Domador, together with the group manager and with revenue agent Raymond, decided that the case was or warranted a fraud development. And they proceeded at that point to fill out the form 11661, which was the fraud development recommendation. And it was based, quote, on false expense and deductions. That false expense and deductions, the Court has shown that if a revenue agent develops does develop firm indications of fraud when she has established that the taxpayer has engaged in a consistent pattern of substantial underreporting of income and overstating of deductions, that was established on December 16th, 2014, before any interview was accomplished, because the B-Lens tax returns from 2009 through 2013 showed those very type of deductions in the Schedule C. In terms of the rule that you're asking for, is it that once you have firm indications, once a civil investigator has firm indications of fraud, that what happens thereafter is then effectively misleading? I just want to make sure I understand kind of what rule you're asking us to adopt. I have questions about whether that rule would be consistent with our precedent, but the first question is just is that the rule you want? If they did not stop the civil investigation and did not they proceeded as the civil investigation instead of referring it to the criminal investigation division, by going forward from at that point, it is a misrepresentation to the taxpayer because they're under the guise of a standard civil audit. They are conducting a criminal investigation. Okay, so I think the answer, and that's fine if that's your position, but the question I would then have is have we said this before? Is that consistent with Robeson and with other cases? We don't have a lot of cases in this area, but we have some, and it doesn't seem like something we've articulated before. Well, I think that we have adopted Grunwald, which I believe is an Eighth Circuit case. But in Robeson, I don't believe that Robeson found, or excuse me, found in that case that there was the firm indications of fraud established, and that's what makes this case unique. However, there are oral verdicts. Even in Grunwald, that three-part test requires affirmative misrepresentations in addition to proceeding past the firm indications of fraud, correct? Correct, and that's why the court below, our district court in this case, found that we did not satisfy the second element. However, he did not apply the test in Peters that if you find the firm indications of fraud, you must stop, and that is also in the Internal Revenue Manual 25.1.2.2.6 requires that. And as the Court obviously stated and correctly, by itself in the normal situation, violation of the Internal Revenue Manual own rules would not be enough unless it's the unusual circumstance that it prejudiced the person's constitutional rights. But I would like to address the ---- Weren't there some civil investigatory purposes remaining? For example, didn't the agents from a civil standpoint, even if criminal purposes were going on at the same time from a civil standpoint, didn't they still need to question the Bielans about their reconstructed taxes? No, they did not. And that is one of the misrepresentations here, is that prior to the interview taking place, the first set of interviews in January, not the second set of interviews that occurred in August, prior to that, they said that they had to do the interview so that they could determine whether or not they were going to allow the expenses. And that was a false statement, and it was repeated several times and was used as a basis for the second set of interviews when, in fact, Revenue Agent Raymond prepared the Revenue Agent Report, and I don't know where my time is, but prepared that report in July, a month before the second interview took place, and on that Revenue Agent Report, all of the expenses were disallowed. Also, the fact that the burden is on the taxpayer to substantiate expenses. So if there would have been no interview and no substantiation, the expenses would have been disallowed anyway. So there's no requirement that Revenue Agent Raymond conduct that interview for that purpose, and there were other matters that she stated that were also false, that she did not conduct the first interview because you could not, the taxpayers could not raise new matters at the appellate level or during appeals, which was an incorrect statement. She also stated that no new matters would, could be raised for the first time at tax court, and that was also wrong. And then she stated that the documents in questions requested were standard. That was not true either. And perhaps the most important one, she read the initial interview form. She had previously mailed the Publication I and the Privacy Act, the notice under 609. But there is nothing in our record that shows that those were received or read by the BLINs verbatim because it's in her notes. First, the way an audit works is that we will ask a series of standard questions for each audit. And there were, in this case, as we saw on December 14th and December, excuse me, and 16th, Fraud Technical Advisor meetings, the Fraud Technical Advisor, Domidor, presented questions to be asked. So this was not standard. But most importantly, the privacy confidentiality, the IRS will not disclose to anyone the information you give us. And that was not true because they gave the information to the Department of Justice, and she knew that, that if this went, it was already in the fraud development stage, and that it was going to CI, it was going to go to the Department of Justice. However, there was no warning with regard to that. And finally, in notice 609, what she said was, when we ask you for information, you must, we must tell you our legal right to ask for the information, why we are asking for the information, and how it will be used. You must also, we must also tell you what could happen if you do not provide it, and whether or not you must respond under the law. That is what was said. There was no warning that we're going to give your information to the Department of Justice. Why don't we ask you, since your time's expired, why don't we ask you to sit down. We'll put two minutes on the clock of extra time for rebuttal. We'll hear from the government. Good morning, Your Honors, and may it please the Court. Veronica Alegria, on behalf of the United States. The Ninth Circuit test for the last five decades is straightforward and should be applied here on de novo review. There is no constitutional violation unless consent was induced by fraud, trickery, or misrepresentation as to the nature of the IRS audit. I hear that fails in two ways, and I will explain why. First, as the district court found, there was no fraud, trickery, or deceit, and the audit was entirely civil until it was referred to IRS criminal investigations. Now, the Belens could not show by clear and convincing evidence that there was no fraud, trickery, or deceit as to the nature of the audit. The uncontroverted testimony by both the revenue agents that testified during the six-day hearing and the Belens' own CPA all agreed that the revenue agents never told the Belens that this was an entirely civil audit, never told the Belens that their documents and information would not be provided to the Department of Justice, and never told the Belens that this could not become a criminal referral. Additionally, the Belens received at least three times through the mail the 609 notice, which explicitly stated that their information could be provided to the Department of Justice and it could be used to enforce criminal laws. How do you respond to your friend's argument that there's no evidence that those were received? That is contrary to the record in the trial where the documents that were discovered during the execution of the search warrant in the Belens' home found the notices and the IDR's information document requests from the IRS in the file cabinet in the Belens' home office right next to the receipts and notices from those taxiers. Additionally, Your Honors, this was not a criminal investigation. All the revenue agents and the criminal investigators stated under oath that there was no direction from the DOJ as occurred in Tweal of the audit, and there was no parallel criminal and civil investigation as occurred in Stringer. There's an internal memo that says, at the direction of or at the instruction of the CID, and we also have some testimonial facts in the record that the agents had already fully signed their civil findings even before that interview. So is it correct that this was a civil proceeding through and through? Yes, Your Honor, and I will explain each of those issues. First, the revenue agent who wrote that email at the direction of CI and FTA testified under oath that that was a mistake. And the Court credited that testimony and agreed that it was a mistake. There was no other evidence and all other testimony explained that there had been no communication or direction between CI and the revenue agents during the entire course of that audit. And it is not clearly erroneous for the Court to agree with that testimony in the face of all the evidence during that hearing. And additionally, Your Honor, at the direction of IRS civil counsel, in determining whether or not to apply fraud penalties and whether or not to hold the statute of limitations open for the 2011 tax filings, they asked the revenue agent to prepare the report. Now, I think it's important to recognize here that the IRM requires the FTA, the Fraud Technical Advisor, the revenue agent, and the supervisor to all agree that there are firm indications of fraud. And that did not occur until after the Bielans' interview. And that the civil counsel also said that they needed the interview, the final interview to happen, to allow the Bielans to explain their reconstructed expenses before they would even apply the fraud statute. And that requires badges of fraud, not firm indicators. So IRS civil counsel said there were not badges of fraud enough to hold the statute open on the 2011 taxes until after that final interview. Let's just assume that there were firm indications of fraud before the interview, just for purposes of argument. Would that change your position? No, Your Honor. I encourage this Court to not follow what the appellants argue should be the test in this Court. It is not about whether or not the district court imposes a objective determination after the fact as to whether or not there were firm indicators of fraud. It is an unconstitutional and an unworkable rule, and it would be contrary to all our sister circuits, and I can explain each of those. First, to adopt that sort of test would be unconstitutional. As the Supreme Court has held all the way since Caceres, the IRM does not create constitutional rights. Now, also in Snodowski, in Bridges, in Crystal, this Court has continuously affirmed that ruling and said you cannot base an exclusionary rule just because there's been a violation of the IRM. Now, it's also unworkable, and sister circuits and this Court have explained various ways why that rule could be unworkable. First, as is replete throughout the record, this is a very difficult decision for a district court to impose on where there are firm indicators of fraud versus just first indicators of fraud or badges of fraud. Now, as this Court held in Liberty Financial Services all the way in 1985, there is good reason to defer to the IRS's expertise, and they have been congressionally mandated to enforce the IRS rules. What is the difference between firm indications of fraud and a badge of fraud? Well, as the IRM explains, it is very difficult to determine, and it's subjected to the experience and the determination of the revenue agent, the fraud technical advisor, and the revenue agent's supervisor. Now, in this case, the revenue agent first thought that there could be badges of fraud, and so she went to her supervisor and her fraud technical advisor. The fraud technical advisor in December outlined a series of steps that she needed to complete in order to find that there were firm indications of fraud. Your Honors, every circuit to look at this issue has not applied the tests that the appellants wish. Now, I want to start with Grunwald. Even in Grunwald, the appellants there urged the district court to find firm indicators of fraud before the final interview. The district court did not do so. It found not only was there no misrepresentation, but there were no firm indicators of fraud after that final interview. I think Peters is very instructive. In Peters, that began with a tip to criminal investigations. Criminal investigations decided there wasn't enough there, and they handed it off to the auditor. Now, in Peters, unlike in here, there was an affirmative statement. The Peters court said there the revenue agent told the taxpayers that this was a, quote, routine civil audit. We don't have any such affirmative statement here. So even if there had been firm indicators of fraud, there was no affirmative misstatement. And then the revenue agent believed in Peters that they had firm indicators of fraud. So she went to her supervisor and presented the case. The supervisor disagreed. Now the court had to determine, okay, here you have an affirmative misstatement. Was that a false statement to the taxpayer when the revenue agent thought there were firm indicators of fraud? The court said no, because at that time, in order for there to be firm indicators of fraud, the IRM said that the supervisor had to agree. And because the supervisor didn't agree, the examination continued until there was a final interview of the taxpayer. And only then, when there was an agreement between the revenue agent and the supervisor that there were firm indications of fraud, did that go on and be referred to criminal investigations, just like here. It does seem inconsistent to tell taxpayers, we might share the information you give us with the Department of Justice, and then to later tell them, we're not going to share the information you give us with anybody. Why isn't that a problem? Your Honor, the — it might be confusing to have both Publication I and Publication 609, which both tell the taxpayer that their information is going to be kept private, but also tell the taxpayer that their information could be shared with the Department of Justice. But Publication I clearly states, except as authorized by law. So when you put the two publications together, the exception in Publication I, with the rule — with the explicit language of Rule 609, it should not be clear. And additionally, there was no affirmative misrepresentation. But I think that that's correct, and I've looked at both of those documents, and the argument you're making makes sense to me. But in the record, and what your friend across the aisle relies on, is some interview notes where it purports to describe what is discussed, and particularly what rights are — were advised to the Belins. And there, that document says, and I quote, IRS will not disclose to anyone the information you give us. That seems sort of categorical. So I come back to sort of what — I mean, what's the government's argument in that particular document? The — in the same vein that, you know, your documents are private, it was also, you know, 609 was discussed, and that says clearly that documents may be shared in the course of law. And, Your Honors, there was nothing — there was no explicit mention of whether or not documents would be shared to criminal or not, except for in 609 when it says they can't. This Court has even allowed evasive answers to a direct question of whether or not there is a criminal investigation pending. That's what happened in Stringer, where there was a direct — where there was a parallel criminal and civil case, and the direct question was, well, is there a criminal case going on? And the evasive answer was, I refer you to the Department of Justice. And this Court said, well, that wasn't an affirmative misrepresentation. It's fine. So this document that I was just asking about, is this something that was given to the Bielans, or is this an internal document? That is the internal notes from the revenue agent. The testimony was, during the hearing, that there was no affirmative statement that documents would not be provided to the Department of Justice, and that was uncontroverted on the record, even by the Bielans' own CPA. What about this issue with the time to appeal? Your Honor, I'd like to make two points as to that. First, it was not technically incorrect, although, granted, it might have been confusing, but technically, because the 2011 tax return had such few time left on it, the internal IRS appeals process would not have taken it unless the Bielans signed the waiver extending the statute of limitations, which is what, Your Honor, the revenue agent was trying to convince the Bielans to do. But they did not sign it, and instead they petitioned to the tax court, which they always have the right to do, and which they knew they had the right to do. But, Your Honor, I think, more importantly, whether or not that was confusing, it was not deceit. I guess I'm, yeah, I mean, I don't know, I'm having trouble understanding how it latches on to the issue we're focused on, which is, was there an affirmative misrepresentation that criminal proceedings wouldn't happen or that they weren't underway? It may be confusing, and perhaps there's some additional argument or claim that may be based on it, but in terms of suggesting that there wouldn't be criminal proceedings, that's why I'm having confusion. Exactly, Your Honor. There might have been other confusing statements or, you know, some argument about whether this is technically correct or a misstatement, but the crucial issue is whether or not it was intentional deception as to the nature. Now, even an incorrect statement, such as in Crystal, is not deception if the revenue agent doesn't understand that. This was just a statement made by a revenue agent in orally or in writing? This is orally, Your Honor. This is during their interview. But does the legal standard require that the misrepresentation go to the civil versus criminal nature? Can't it be any misrepresentation that induces some further participation or step in the process? No, Your Honor. It must go to the criminal versus civil nature. Now, as this Court held in Jones v. Berry in 1983, even an IRS agent that goes undercover and lies and pretends that they're criminals, that's fine. The IRS agent can lie about that. What they can't lie about is that the audit is entirely civil in nature when it is criminal. Now, they can have that. Like they could have had in Tweal, like they could have had in Stringer, parallel criminal and civil cases. But there just can't be an affirmative misrepresentation. And that is exactly what happened in Groter in the Fourth Circuit, very similar case to this case, where the Court was asked whether or not to second-guess whether there were firm indications of fraud. And the Court held that even if the more experienced agent had found earlier that there were firm indications of fraud, there was no deception because that agent thought that there were firm indications of fraud only after the final interview, and therefore there was no deception and there was no affirmative misrepresentation. We've let you go a little over. Do you want to make a brief concluding remark? Yes, Your Honor. The district court's finding as to fact, as to whether or not there was an affirmative misrepresentation, should not be overturned. And this Court need go no further than that on de novo review. Thank you. Thank you. We'll hear rebuttal from Mr. Garvin. Let's put three minutes on the clock. Thank you. Thank you, Your Honor. I'd like to address a few points that the Court has inquired about. And first is, we cannot forget that the district court below found that there were firm indications of fraud by no later than April, and the second set of interviews were in August. The revenue agent report was completed in July before the interviews ever took place, and that the remarks that are being made and the representations that are being made to the Belands are incorrect, are all designed to get them to voluntarily appear for a second set of interviews, which was all designed because they had firm indications of fraud, which meant this case was going to be transferred to the criminal division. And by continuing on, they were making a misrepresentation. And I want to go back to the Stringer case. Of course, the Court realizes that the Stringer case was not an IRS case at all. It was an SEC case, and that the notice in that case was not Publication I or 609. It was the SEC Form 1662, which clearly provided that the individuals had a Fifth Amendment right not to answer any questions. That language is found nowhere in the IRS materials. There is no Fifth Amendment warning. And in the Stringer case, on the day that the interview was taking place, Stringer was there with counsel, and the SEC lawyers warned them again that orally that what they were going to do, they could assert their Fifth Amendment rights. In Stringer, they chose not to. That has nothing to do with what this case is about. And with regard to the Publication I and the privacy notice under 609, counsel states, well, they found it in the closet. There's no evidence in this record that either of the Belands read these documents. But what we do have is the initial interview prior to it starting, on the record 21-ER-3303, they checked the box if they made the statement to the taxpayer. And with regard to the taxpayer rights, which is Publication I, what is checked, and I quote, privacy confidentiality, IRS will not disclose to anyone the information you give us, end quote. There is no warning whatsoever that is going to end in the hands of the Department of Justice for criminal prosecution. And counsel says, well, there is some reference to it in 609. But when you see what the IRS thought was important and is in their interview notes, as I read to you earlier, when we ask you for information, this is a quote, we must tell you our legal right to ask for the information, why we are asking for the information and how it will be used. They never told them how it would be used. They never told them that this was going to the Department of Justice. Your Honor, you have correctly analyzed this case that you can make affirmative misrepresentations, as we found in Twheel, the classic one. I ask, is there a special agent in this case? And the answer was no, which was a bold-faced lie. You have that type of misrepresentation because of the things that I just told you. But you also have, in this case, the court found that there were firm indicators of fraud, and at that point, the Internal Revenue Manual says that you stop there with the civil case and you transfer it. And then we have cases that say, okay, just because the IRS has an internal manual, they don't have to be bound by it unless the unusual situation on which it adversely affects the taxpayer's constitutional rights. And in this case, the district court found that their constitutional rights were prejudiced. So we have a situation here in which they have firm indications of fraud found by the district court and the prejudice to their constitutional rights found by the district court, and therefore, they had no choice. The fraud technical advisor, Domidor, the group manager, Pardo, and Ms. Raymond had to stop that investigation under the context or the auspices of that it was a standard civil tax audit. That had to stop, and they had to refer it. We'll let you go over your time. I want to thank you, Mr. Garvin, for your argument this morning. We thank Ms. Alegria for her argument. This matter is submitted.
judges: BRESS, FORREST, Ohta